(47 App. Div. 530.)

### POTTER PRINTING–PRESS CO. v. SCHREINER et al.

(Supreme Court, Appellate Division, Second Department. February 6, 1900.)

SALE—PASSING OF TITLE—WAIVER.

     Where plaintiff agreed to sell, and defendants to buy, a press, for which defendants were to pay plaintiff $500 cash when the press was set up and in satisfactory order, and to secure the balance by mortgage thereon, the question whether the cash payment was waived, so that title then vested absolutely in defendants, without any lien for purchase money, is a question for the jury, there being, on the one hand, testimony that when plaintiff called, after the press was in order, he granted defendants' request for "a week or two more" in which to pay, and, on the other hand, that defendants then merely said that they would take possession of the press if they got a partner who could furnish the money, and that plain-

tiff merely allowed it to remain till they found out whether they could get a partner.

Appeal from trial term, Kings county.

Action by the Potter Printing-Press Company against Joseph J. Schreiner, impleaded with others. From a judgment for said defendant, and from an order denying a new trial, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

Hector M. Hitchings, for appellant.

George F. Roesch (Joseph Steiner, on the brief), for respondent.

WILLARD BARTLETT, J. In this action the plaintiff corporation seeks to charge Joseph J. Schreiner, as a partner of the other defendants, Herman C. Boedicker, Robert Rummel, and Gustave Gutgemann, with liability for their refusal to carry out a contract for the purchase of a lithographic press. The other defendants did not interpose any defense, and two of them testified in behalf of the plaintiff upon the trial. In their transactions with the plaintiff corporation the defendants (whether the defendant Schreiner was a participant or not) acted under the name of the Decorative Designer Company. The plaintiff corporation agreed to sell to the Decorative Designer Company, and the Decorative Designer Company agreed to buy from the plaintiff corporation, a lithographic press, for which the purchasers were to pay $500 cash when the press was set up and put in satisfactory running order, and $1,900 more six months later; the latter payment to be secured by a chattel mortgage on the press. The press was put up, some work was done upon it, and in the middle of October, 1897, a conversation took place between Robert Rummel, one of the defendants, and Horace W. Fish, the vice president of the plaintiff corporation, in regard to the manner in which the press was working, and the fulfillment of the promise of the purchasers to pay therefor. No payment having been made, the plaintiff corporation subsequently took possession of the press, and sold it at auction, after notice to the defendants of the time and place of sale. The present suit is brought to recover as damages the difference between the contract price of the press and the net proceeds of the sale thereof at auction, which difference is alleged to amount to $1,270.40. The proof shows that the press was bought at the auction by Mr. Fish for the Potter Printing-Press Company, so that it went back into the hands of the vendors after having been used a short time by the defendants, bringing with it the claim for damages which is asserted in this action. At the conclusion of the evidence in behalf of the plaintiff, the learned trial judge dismissed the complaint. The grounds of the dismissal are made very plain in the oral opinion which he delivered in granting the defendant's motion. He held that the sale of the press was conditional upon the payment of so much of the purchase money as was payable on delivery, so that the title did not pass immediately upon the delivery.

"If the parties refuse to pay a stipulated sum on delivery," he said, "then the seller may retake his property; but, if he extends the time to pay the money that is to be paid at the time of delivery for a definite period, as was done in this case, it ceases to be a conditional sale. When he agreed to wait two weeks, I think the title vested absolutely in the vendee, and, if the plaintiff no longer had a lien upon it, he had parted with possession and title, and had not a vendor's lien which would justify a retaking of the property."

Such retaking was declared to be a rescission of the whole sale, the vendor having his property, and the purchaser having nothing. Again, in an opinion handed down on denying plaintiff's motion for a new trial, the learned judge stated the theory upon which he had dismissed the complaint in these words:

"There was no express stipulation that title to the press should not pass until payment was made; and while delivery, in the first instance, did not pass the title until the cash payment was made or waived, the title did pass when a definite credit for that payment was given. A retaking of the press after that, there being no lien for purchase money to justify it, amounted to a rescission of the sale, and the plaintiff, having taken the property, cannot recover the price."

This disposition of the case was unquestionably correct if the evidence in regard to the October interview between the defendant Rummel and the plaintiff's representative, Fish, left no room for any inference except the conclusion that the vendor had then waived that condition of the contract which required $500 to be paid when the press was in satisfactory running order, so that the title passed to the purchasers. The question whether a vendor has waived a condition upon the performance of which the title was to vest in the vendee is usually a question of fact depending upon the intention of the parties and all the circumstances attending the contract of sale and delivery. Adams v. Lumber Co., 2 App. Div. 47, 37 N. Y. Supp. 265, affirmed in 159 N. Y. 176, 53 N. E. 805. Cases may occur, however, in which the uncontroverted proof is so clear as to warrant no other inference except that of a waiver, and, if such was the character of the evidence in this record, we should have no trouble in affirming the judgment on the ground upon which the learned trial judge placed the dismissal. A careful scrutiny, however, of all the testimony relating to the conversation relied upon as establishing the waiver convinces us that this evidence is fairly capable of sustaining different inferences. Mr. Fish gives this account of his interview with Mr. Rummel:

"Q. State the conversation. A. I called there to see if it was running satisfactory. He said it was. I said then, 'You will probably be able to settle for the press soon?' He said 'Yes, I think we will; but we would like a week or two more and call again.' I called again. Q. Did you give him a week or two more? A. Yes, sir. Q. Did he tell you anything about Mr. Schreiner at that time? A. No, sir; not at that time. At that time I thought they would be willing to pay for it."

If this stood alone, it would go very far towards sustaining the action of the trial court; but Mr. Rummel's testimony tends to show that Mr. Fish consented to leave the press there, and wait for the payment, not with any intent to make a delivery thereof irrespective of the promised payment, and thus transfer title, but simply in order

to enable the purchasers to procure a partner with whose aid they would be able to carry out the contract. Thus Mr. Rummel says:

"When Mr. Fish called on us to inquire why we had not paid for the presses it was in the first part of October or middle of October,—a few days after the presses were in working order; it might be a week. I did not give any order to take the presses away, but only told him the circumstances,—how we were fixed,—and, if we got a partner, we should take possession of the press; and he thought he might make arrangements to leave it standing till they could take it right."

The statement by Mr. Rummel to Mr. Fish that they would take possession of the press if they got a partner is opposed to the idea that either of the parties to the conversation then supposed that the legal title to the press had been or was being transferred to the defendants.

On the authority of Adams v. Lumber Co., supra, and the cases therein cited, I think there was a question of fact in respect to the alleged waiver which entitled the plaintiff to go to the jury, and, inasmuch as its counsel expressly asked to go to the jury upon the question of whether there ever was a delivery of the press to the defendants, the denial of that request was error, for which the judgment must be reversed.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur, except HIRSCHBERG, J., taking no part.